Witnesses can be biased, Your Honor. The physical evidence cannot. Witnesses can be impeached. Physical evidence cannot. This quote summarizes exactly the material facts that were disputed in this case. So what does – let me sort of walk you through this, because here's what I'm interested in. We have an autopsy report that shows a bullet entering downward through the shoulder and exiting somewhere below, and another wound in the torso. The police only remember – both policemen only remember what I assume is the torso shot, because the officer testifies that I fired into his torso. Everybody remembers the shots as coming in rapid succession. What does the expert report and the autopsy report put into – into dispute? Well, two things. Corrections, Your Honor. The shot is actually to the neck, and then downward, not the shoulder. Right. Well, I – Two shots, one to the – This area. Yeah, and then one to the left. Right, right. Okay. The other – the other point of clarification, the officers only remember one shot. That's correct. So they don't remember rapid succession, because they only remember one shot. Right, but the – Witness. The independent witness whose – whose version changes from deposition to the time he's in court, both times says it's in relatively rapid succession. Correct. So with those corrections, tell me why – tell me what factual dispute this report creates. The report troubles me, so – but I want to – I want you to be precise for me and tell me what – what issue of fact it leaves for trial to the jury. Certainly, Your Honor. The – the ballistics expert, Lance Martini, will say that given the – the nature of the two bullets, the fact that you have it to the left flank and through the neck, there had to have been some movement of the bodies. Right. And so assume everything he says is true. I want you to – to do that. And I think at this stage of the proceedings, we have to. That would create – What – what does it tell us? That would create a lot of concern regarding both shots. You would have two possible scenarios. One is that the first shot is to the neck, and then as Mr. Bousset is falling, there's a subsequent shot that would have went to the left flank. That shot alone can be excessive. Or the second is that the first shot is to the left flank, and as Mr. Bousset is falling down, the second shot is downward into the neck. Sure. Again, if you – if you look at each shot independently as your – as the – as the determined to be excessive. Let me – let me make sure I understand your position on this. With respect to the first shot, no matter where it went, are you contending that was excessive force? Yes. We're – we're contending both shots are excessive force. Okay. Let's assume that the first shot is not, under the circumstances, given – given what was going on at the time. Do we have to make a conclusion about which was first or second under the circumstances to determine whether excessive force was used? No, but you could make the determination that whether the first shot was to the neck or to the left flank, the second shot is definitely excessive. Well, but the first shot – the shot to the neck is fatal, as I understand it. Correct. So let's assume the officer took a fatal shot at Mr. Bousset, and that that was reasonable under the circumstances because they were involved in an altercation, and then later put another shot into his torso. Under those circumstances, if a second shot follows a fatal shot, is there excessive force? Yes, Your Honor. And especially – That just goes to your damages, I take it. Yes. And especially, Your Honor, given the nature of the shots, if, for example, they were in rapid succession, the – Mr. Martini would also say you would expect to see the shots closer together in position. You would expect to see either two shots closer into the left flank area, or you would see two shots closer to the neck area. Is there anything in the record that would explain the placement of the two shots? In other words, we know what the expert says, but is there anything in the record that would allow me to say, yes, now I see Mr. Bousset fell backwards or he fell forwards or the policeman stood up? Is there anything in the record that would allow me to draw conclusions as to that? Well, it still wouldn't allow us to draw the conclusions as to which shot was first and which shot was second. Mr. Bousset did fall on his back, and that's what Officer Goff states and Mr. Jones say. And that's why I was having some difficulty figuring this out, because if Mr. Bousset fell on his back and was shot in the torso first, then the shot going downwards through his neck area, it's hard for me to imagine unless somebody stood up and walked to the other side of him. Well, the most troubling thing for our argument – well, not for our argument – the scariest scenario that we could envision that Martini would say is reasonable based on the facts and the position would be if the first shot was to the left flank and Mr. Bousset is on his way down and the second shot is above him at a downward trajectory. And that would be the most – that would be the scenario that's most favorable to your claims. The difficulty with that is that the witness, who may or may not be accurate, doesn't see that occur. Well, and the other problem is the witness, as you know from the disputes, doesn't – because of the way the alcohol is positioned and his positioning, there's a wall that's blocking exactly what happens. So gunshots happen very quickly, positions of bodies change quickly, and obviously if he hears two gunshots, he will say he immediately went to the ground. So it's not as if the witness is staring at this incident as it's unfolding. There's a lot happening. So quite possibly that could have happened. He just didn't see it. Do you dispute that Mr. Bousset was acting irrationally that day? No, we do not dispute that, Your Honor. And was fighting with the police officer. We do not dispute that. And was having the better of it. He was beating up the police officer. We do dispute that, Your Honor. What's the nature of that dispute? The nature of that dispute is based on the photographs and some of the inconsistent testimony of even the witness, Jones. I couldn't see your photograph. It was just a black and white Xerox. Nobody bothered making a decent inkjet copy of the picture. So I don't understand how we can draw any inferences from the photograph. I understand that, Your Honor. Is there an original in the record? The colors were not, it was an error. The colors were supposed to be admitted and they were not black and white. What would it show? But it would show that there was lack of physical injury, bruising, any cuts, any bleeding from the heads of the officers consistent with this pummeling as the defense counsel has tried to frame this fight. Again, also, if you take Mr. Jones' testimony from the deposition versus his testimony at the evidentiary hearing, he made it even seem as though Mr. Doucette was never trying to physically harm the officers in the sense of knocking them out. And if he wanted to, he could. He even used the term on a couple of occasions throughout the incident that Doucette was playing with him. I think that also goes to Your Honor's question about him acting irrationally in his mental state at the time, which I think is also something that the court should consider in their analysis of the overall totality of the circumstances as to whether or not the force was reasonable. Let me ask you a little from a little different perspective about it. I'll tell you my rough take on it so that you can address it. I don't think your first shot, second shot theory that the second shot is the excessive force carries much water because for the police to have thought there was only one shot, they have to have been fired in very rapid succession in an excited circumstance. You would not expect a whole lot of reflection before the second shot when they're fired in very close succession. And I believe it's just standard training in all kinds of combat to shoot twice. It looked like the thing that was most reconcilable with all the facts that are indisputable was that on the first shot, the cop is on his knee and shoots pretty much straight across horizontally and I think was the left flank of the victim, the decedent. And then the second shot is downward, so by then the cop must be up and the victim must be down. So I focus on the first shot and how I look at the three factors in Graham, the severity of the crime, whether the suspect posed an immediate threat to the officers of public safety, and whether the suspect was resisting arrest or attempting to escape. On the immediate threats to the officers, the burden of proof is really complicated. On the one hand, the Supreme Court says we have to take the facts from the point of view of an officer in an emergency situation, but on the other hand, we have to take the facts under saucier versus Katz most favorably to the decedent, and I frankly have not figured that out. I can't figure out the immediate threat to the officers of public safety. The officer, I guess the threat to him is he says the guy is beating me up, I was afraid I'd lose consciousness and he would take my gun. Why isn't that enough? Well, two things, Your Honor. First, and also I should have asked to hold three minutes for rebuttal. Please. Okay. The first thing, as far as the, well, on a grand scale, Your Honor, you have to assume then that you're taking the testimony of Officer Goff. I have to assume what? You are taking the testimony of Officer Goff solely and judging the facts more favorable to the moving party as opposed to the non-moving party. The difficulty in death situations with assessor force cases and courts, the higher court has said this, is we don't have Mr. Doucette here to contradict that. We don't have Mr. Doucette to say, I never reached for the gun. We don't have Mr. Doucette to say, I wasn't striking it, my heart isn't trying to hurt him. So what we have to do. And Jones and the other policeman saying, and for that matter, Goff saying, this guy had a beautiful body and the highest degree of fitness. And Jones says he was so superior to the policeman, he was beating them both up without strain, basically. Well, he says contradictory things. But assume that there was an altercation or a fight, Your Honor. You can't just shoot and kill someone because you're engaged in a fist fight as police officers. The test is whether or not you are faced with serious bodily injury or the fear of death. Officer Kawahara, who is a more senior officer than Officer Goff, faced with the same circumstances, with the same fight, never even drew his gun. In fact, Officer Kawahara tells Officer Goff, he says, put out a help call. I don't have any trouble with what you're saying now. I think you're right. It looks like, well, Goff is a rookie. But still, they're all rookie cops, and we still have to apply the law the way Graham and Tennessee v. Garner and this other line of cases says. Once Goff is in this fight that he's losing, well, can we take it for purposes of this motion that Goff is in a fight and he's losing? But that still does not complete the analysis. What should he have done? If he's getting the hell beat out of him, he's just supposed to sit there and take it? Or what is he supposed to do? He should listen to the more senior officer and put a backup call out. He's getting beat up. He doesn't have, you know, he can't just get to his radio. He's getting beat up. Well, again, Your Honor, we believe that the level by which he's claiming he was getting beat up is in dispute based on the photographs. And even some of the testimony of Mr. Jones at his original deposition. What if it's not? I'm not sure I share my brother Kleinfeld's view of the case. Let's assume that that first shot was justified because he was getting beat up. My question is don't the facts here raise a dispute about when the fatal shot was administered and perhaps it was administered when he was no longer in danger? Absolutely. And again, because we don't have Mr. Doucette here to say I was falling down when that second shot, a jury should make that determination as to the second shot. I know you want to save time for rebuttal, but think about this. I want you to return to it. From what facts could a jury reasonably conclude that that second shot was excessive? You've told me what the forensic expert says and what the autopsy is. I want to know what the reasonable inference from those facts would be that it would need a jury to be able to conclude that the second shot was excessive. Thank you, Your Honor. That's your homework for your rebuttal. Thank you. Thank you. Good morning. Good morning, Your Honors. Lisa Berger, deputy city attorney for Appalese. I feel compelled to say before I start that my kitchen countertop is made of quartz. Thanks. That really helps. Help me on something else, too. Are you done as far as I'm concerned? This first factor in Graham is severity of the crime. It's one thing to shoot somebody who's committing or you think he's likely to commit a very serious or deadly crime. For example, in Billington, the person had been driving very recklessly, and he was likely to kill or injure somebody with his driving if Billington didn't stop him. And in this case, by contrast, the crime seemed to be not paying a cab fare, and then maybe there was indecent exposure if anyone saw him at 2 in the morning running around naked. And it looked like the most serious crime that this fellow committed or was likely to be committing. Since he was running around naked, you could see he didn't have any weapons. It seemed to be jumping on cars because every time you put a dent in the hood of a car, it's maybe $1,000 to fix it. Under Tennessee v. Garner and Graham v. Conner, I'm having some trouble seeing why the severity of the crime justified a violent confrontation. Why wouldn't a reasonable policeman in the circumstance just either hold the guy at bay six feet away or tase him or let him get away rather than tackling him and trying to suppress him physically? I answer that in two parts, I guess. For the beginning part of the chase and the interaction, it was clear that deadly force would not be appropriate, and that's why the officers didn't use the taser, why they tried to talk to him. Well, taser's not deadly force, right? No. An escalating force would probably be a better way to put it. Because for most of the interaction, while he seemed to be clearly nuts. Looks like he's either high or nuts. He wasn't really being aggressive. Really the most at any point was maybe he clenched a fist. Then when he runs away the second time, the officer just wants to stop him, keep him from getting in the building because he really doesn't know what's going on inside. Why? What's a naked guy or a guy in shorts going to do if he does get in the building? He could break into some woman's apartment and climb into bed with her. Who knows? Was deadly force necessary to keep him from trespassing? Up to that point, no. So when he's cornered. Right. He's cornered on the staircase into the building. Why was force at that point? All the officer wanted to do was to get him in an arm lock, to somehow stop him, handcuff him, and find out what was going on. Where does he belong? Does he live here? Perhaps arrest him for not paying the cab fare or for the indecent exposure or whatever it is. But there was no – at that moment, there wasn't any thought of the kind of level of force that ended up being needed. But is it clear that the officers initiated the incident that resulted in Mr. Doucette's death? In other words, he didn't come running at them. They came running at him. If it's enough that the officers followed him. I'm not talking about the legal consequences. I'm just asking factually. Factually, he was on the steps and they approached him. It wasn't like they were down at the bottom of the steps and he ran down towards them. Right. Well, they had been chasing him for a couple of minutes. Right. So, yes, if the officer approaching him with the idea in his mind, I'm going to try and take hold of him, if that is considered – I'm just asking about the facts. I'm not asking about the legal conclusions. Instigating a fight, then yes. Then the officer instigated it because he's the one who approached. Let me – He never actually touched Mr. Doucette before Mr. Doucette turned and sucker punched him. Let me ask a question that I asked your opponent, and let me try to phrase it in a way that views the evidence in the light most favorable to him. We have two police officers who testified that only one shot was fired. We know that testimony is false. We don't know whether it's a lie, but we know it's wrong. We know that the fatal shot was – came from an angle that is hard to explain given the police officer's description of the – of the altercation. First of all, they don't describe the second shot. But second, they say one shot, he falls backwards. And so if they pulled off the second shot quickly while he was falling backwards, it wouldn't have entered from above, but rather from below. Why isn't that enough to get them to a jury? The most that that evidence shows is that a reasonable jury could conclude it didn't happen the way the witnesses described it. And if it didn't happen the way they described it, there's a multitude of other ways it might have happened, aren't there? Exactly. And that's why summary judgment was appropriate. Why couldn't – why couldn't a reasonable jury have thought that the second shot was the one that went downward from the neck and that it was an execution? That's a better way of putting my question. A reasonable jury could conclude it happened that way. It could conclude that it happened as Mr. – the second shot was as Mr. Doucette was falling. It could conclude that the officer was able to struggle to his feet. And at the – at a moment when Mr. Doucette was leaning over – If a jury could conclude that, why isn't your case over? Why doesn't it go to a jury? Because the only way the jury could decide how that happened, there's no evidence. It would be a complete slip of a coin speculation. There is evidence. The evidence is that the fatal shot was fired on an angle different than the shot into the torso. Nobody disputes that. That it went downward from the neck out. And that, as I view all the witnesses' testimony, that's not an explanation consistent with the way the officers testified. Why isn't that enough to cast doubt on their credibility and create a jury question? If that trajectory could have happened only under circumstances that would constitute excessive force, then yes, I agree with you. Is there any evidence in the record from which I can conclude that that trajectory was consistent with their story about what happened here? It doesn't have to be consistent with the witness' story. It doesn't have to be. Well, no, you can win at trial. But my question is a summary judgment question. My question is if I know that the two officers who are testifying are not describing the incident accurately, because they say there was only one shot, and I know from the physical evidence that the second shot, that what could be the second shot, and I think it has to be given the officer's testimony because he says, I fired into his torso, and that's perfectly consistent with what the physical evidence, if that second shot could only have occurred through a change in position and the officer's story is that the guy fell backwards one shot, so it couldn't have occurred from a quick second shot as he fell backwards. Why isn't that enough to get them to the jury? Because, as I started to say, if the only possible explanation for that was excessive force, then it would be reasonable to allow a jury to decide if. So the summary judgment. Because there are so many possibilities, some of which are excessive force, some of which are not excessive force, and there is no evidence on which a jury could base the conclusion that it was excessive force, and the only way they could decide that would be a flip of a coin or to speculate, to say maybe it happened this way, maybe it happened that way. That's insufficient to support a verdict. Why couldn't a jury decide that Goff could have and should have retreated once he perceived that Doucette had the physical ability to beat him up? In Billington, the cop couldn't retreat because his gun was already out and the decedent was grabbing the barrel and they were fighting for possession of the gun. So he couldn't just raise his hands back off, say, hey, everything's fine, don't worry. But in this case, the gun was still holstered. There was another cop maybe two steps behind on the stairs up there almost immediately. Why couldn't he, once he saw that Doucette could take him, back off with his holstered gun and say, wait, let's just talk this over, or chase him? He didn't know that that was the situation until he'd already been punched. Well, he'd been punched. But once somebody has successfully punched you and you're on the ground, ordinarily you could scuttle back or back up. Why couldn't he retreat? Rather than close with the decedent, pull out his gun and shoot him. Well, Mr. Doucette didn't just punch him and then stand back. He immediately followed up by continuing to hit him. But why couldn't the cop stand back? He was on the ground. He was knocked down by the very first punch, and then Mr. Doucette proceeded to continue punching him to reach for his gun, which even if you don't believe that happened, he's got him down on the ground. I think it was uncontradicted that Doucette tried to get his gun, but he couldn't get it out of the holster. This is one of those very secure holsters. And I would agree with that. I was giving the plaintiff the benefit of the doubt that they dispute that. But it happened very quickly. I mean, we're talking 10 to 20 seconds. He's down on the ground. He's not unconscious yet. He's not unconscious, but he's not on his feet. He doesn't have really anywhere to go in this alcove. The second officer comes in within five seconds. Was he being kicked? Mr. Jones said that at least at some point when both officers were down, Mr. Doucette was butting them with his knees. I thought he said butting. Correct. And that's you could still scuttle away if somebody's butting you, but if they're kicking you in the head, you probably can't. Well, punching him in the head and butting him with the knees is how Mr. Jones described it. There's really no dispute whatsoever that the two officers were both on the ground, that Mr. Doucette had them, that he was punching them alternatively. And there's no evidence that would permit the jury to say that a reasonable officer under those circumstances would have felt that there were alternatives that he could use. And this has to be viewed from the viewpoint of a reasonable officer. Officer Goff is down on the ground. He's feeling dazed. He's not entirely sure what condition his partner is in, but he can tell that his partner is being hit. He sees this man, this strength trainer. I think Kawahara, the partner, testified that he was surprised that Goff shot Doucette. He, yes. It wouldn't have been surprising to him if it was obvious to him that they're both getting successfully beaten up. Different officers might view the level of danger or the level of force needed differently, but the question in an excessive force case is whether or not a reasonable officer could have believed that he or his partner were in imminent danger of bodily harm. And as long as a reasonable officer could believe that, then it's reasonable. And it's consistent. Let me ask you a question, if I may. Yes. The defendants in this case are Officer Goff and the city of Los Angeles. Is that right? I believe so, yes. Officer Goff is the only one of those two defendants who would be entitled to qualified immunity. Yes. Is that right? Yes. We could in theory, I'm not saying we're going to hold this, but we could in theory say that even if Goff used excessive force, his mistake was reasonable under the circumstances. He shouldn't have done it, but it was unreasonable. I mean, it was the kind of mistake that immunity is designed to protect against, right? That was exactly the point that I was hoping to move to, yes. Okay. But then that doesn't help the city of Los Angeles, right? Well, there's no liability against the city of Los Angeles in this. They can show a Monell claim, and they have not alleged any form of policy, procedure, anything that would support a Monell claim. Didn't they bring a wrongful death case against the city? I apologize. I have state law. State law. State law. I understand what the question was. I'm not sure what the basis of the wrongful death cause of action is. I apologize. Can you win on a negligence case? Or I have this vague recollection that there's some sort of state law claim against   I apologize. Can you win on a negligence case? Well, you can't have negligence against a public entity because there has to be a statutory basis, and there's no negligence statute. It would have to be battery, assault. There would have to be some sort of statutory basis. I have this vague recollection that California state law has some kind of statutory qualified immunity for what would otherwise be a good tort case. Do you know if that's so? There's different immunities. There's discretionary immunity. There's discretionary function. There's a whole different deal. So, you know, there is a count for wrongful death in the First Amendment copyright. Okay. So just again, just to think this through, we could in theory say that Officer Goff gets qualified immunity, but even with the ambiguities in the facts, that wouldn't help the city particularly. I would actually also have to look and see whether the Federal court had bifurcated the state cause of action. I didn't see that. And whether or not the so whether the summary of the case. And let me ask you a technical California law question. The second cause of action is against Officer Goff in addition to the city, as I read it. Even assuming that there's not a 1983 claim here, can there be a state law claim for use of excessive force? There can be a wrongful death cause of action, again, based on. Against an officer. For example, a battery. It would not include pain and suffering. Right. No, I'm not talking about damages. It would just be for the strictly economic damages. Right. So if we were, even if the panel were to conclude that the district court was right in finding qualified immunity, and I'm not suggesting how the case comes out, how could we dispose of the state law claims? Wouldn't we have to say they were made? That goes back to the main part of this argument, which was there's no reasonable basis on which a jury could have found excessive force. Did the judge – I just was reading the motion for summary judgment order quickly while you were up here. Did the judge make any finding at all in the state law claims? No. It was bifurcated. I see that it was bifurcated. And then what – how did that resolve, do you recall? If the state law causes of action were bifurcated, then the summary judgment would dispose only of the Federal causes of action, and the plaintiff would have to return to state court to follow to the state laws. Well, maybe if the state – if this judge remanded them. But is there a – Maybe you don't even have a final judgment. Yeah. I was just about to ask, is there a 54B language in this judgment? I can't answer that question. I'm sorry. I can, but I don't know the answer until I find it. Could you help me a little bit on Diorle? There's this case we have, Diorle v. Rutherford, where the police confront somebody and they use nuts and they use a bean peg, which usually doesn't kill people, I guess, but it did in that case. I'm sorry. I may be confusing the facts, but if I remember that one correctly, the defendant or the decedent in that case had stopped fighting, was under control. He never did have physical contact with the officers. That part is distinguishable. Right. The part that I was concerned about is there's this long section of the opinion expanding on the proposition that, quote, the character of the offense is often an important consideration in determining whether the use of force was justified, close quote. And that was why I asked the first question I did. That and Graham, the character of the offense that led to this deadly confrontation with Doucette seemed so trivial. Well, at the time of the shooting, the offense Mr. Doucette was guilty of was battery on a police officer, possibly assault with a deadly weapon, given his physical condition. Unless the court's thinking of the case as a case of a deadly weapon, battery on a police officer is almost anything. Probably most, or I don't know most, but a very high proportion of the time a policeman arrests a drunk, there's a potential battery on a police officer charge. Well, potential is one thing. It is undisputed that Mr. Doucette punched the officers, both of them, had them down on the ground. Can a policeman shoot a suspect any time a suspect punches him, or does there have to be a serious risk of death to the officer? A serious risk of injury or death, yes. Any injury or just serious injury? A broken finger, maybe not. I mean, then I would say it goes to a jury to decide whether or not it's sufficient or not. A bruise? A bruise? Counsel, could you answer my question? Is the danger of a bruise or the infliction of a bruise sufficient to justify deadly force? One punch and it's over? No. Okay. Before you sit down, I just want to make sure I understand the record. There's two summary judgment rulings in the court. In the first one, it bifurcates the claims, grants summary judgment as to the Monell claims. I'm not clear whether that includes, it bifurcates, saying there are some remaining state law claims, but I bifurcate. That doesn't seem to be a signed order. Then we have a signed order from the judge granting summary judgment on the 1983 claims. Is there another signed order entering final judgment in the case? I'm concerned about our appellate jurisdiction. I would have to go back and look at that. I can't find it. I'd raise it because you know the record better than I. Okay. Thank you very much, Mr. Gerger. Mr. Hicks, back to you. I wonder if you'd mind addressing whether we have a final judgment here. I'm not sure of that answer, but what I can tell you, Your Honor, is that there was a state claim filed on the theories of wrongful death as to the officer, Goff, and city of Los Angeles. Right. And the judge never ruled on that claim. At the very end of his minute entry, February 15th, that 2012 minute entry, the judge says the viability of state law claims turns on whether the force was reasonable. It's an issue properly resolved at trial, not at the summary judgment stage. Therefore, I bifurcate it. Now, his eventual finding may have implicitly disposed of it, but I can't find any judgment that says that claim went away. But maybe I'm wrong. And I can tell you procedurally what we did, Your Honor, is then file a state law complaint. In state court. In state court. And it got stayed pending the appeal. Okay. So did you withdraw, without prejudice, your Federal claim? No. Pending the appeal, aye. Okay. Without deferring yet with my colleagues, I would suggest that maybe when we're done, counsel could send us a letter advising us whether there were any pending state claims. To put, yeah, let me add to it. The question is whether we have a fellow jurisdiction. I have a slightly different form of what I think is the same question. Do we have a final judgment as to all claims and all parties from the district court? Right. If we don't, we need a 54B determination by the district court to have jurisdiction. If we do have a final judgment as to all claims and all parties, then we have jurisdiction. And we can send you back to the district court to get one. But we can't. We may not have jurisdiction to rule on the case if there's not a final judgment. We did that in an en banc WMX. We just sent a PAC and then did it again. I will look into that and confer with counsel. We won't make you come back and re-argue the case if that happens. Thank you. Is there anything you wanted to say? And then we'll conclude. Yes. Your Honors gave me some homework regarding the second shot and the ballistics. What I would ask the court is if you could turn to page 383 of the record, which is page 4 of Mr. Martini's report. And I think this is what would prove to be or could be why the jury would determine the force to be unreasonable as to the second shot. The report says two separate and distinct gunshot wounds are present to the decedent as reported in the LA coroner's autopsy report. These wounds differ significantly in terms of location and directionality. I forgot to bring that issue up as it relates to this notion that they were rapid succession and why that fact is a material dispute. The gunshot to the base of the neck and the area of the throat exhibits a pronounced downward and front-to-back directionality with a slight side-to-side deviation. The shot to the left flank side exhibits a pronounced left-to-right directionality with no other reported directional observations. And he opines from these facts the difference in the locations and directionality of the two gunshot wounds sustained by Mr. Doucette would require a significant change in the body positioning of Mr. Doucette and or that of Officer Goff between those two shots. There would also be a corresponding time delay between the two shots and the two shots would not have been discharged in rapid succession as would typically be described as a two-shot burst. I mean, Ms. Berger made the point that, okay, there are a number of scenarios you can hypothesize from that. But when all is said and done, there's no way to know one way or the other how this happened. How can you win your case? Because the jury could determine whether the first shot was to the throat or the first shot was to the leg. That is successive. There was no need for two shots. At a minimum, they can make that determination. Our argument is, based on the material disputed facts, they can make the determination that Officer Goff was never in fear of serious bodily injury or death. And both shots. How do you find that from this? How do you find that from this? Well, that was to answer Your Honor's question regarding the second shot. My theory is we could win two different ways with the jury. Number one, they could feel that both shots were excessive, which is our argument, that they both were excessive. At a minimum, they could find that shot number two, whether it was the neck or the flank, that shot was excessive. What would permit them to find that? Based on the fact that Officer Goff's representation of his position is not consistent with this evidence. And if they find him not to be credible, they can find that his version of only shooting one shot also not to be credible. And then the second shot to be excessive. Sir, put it differently. If this forensic evidence casts significant doubt on the credibility of Officer Goff, then you think that that doubt extends to his contention that he was in this situation where he feared significant bodily harm? Absolutely. Coupled with the facts of the photo. So if the jury. We're all having trouble with the photo. And I understand that. But to answer your question, if the jury determines based on the trajectory evidence that Officer Goff is not credible, which is the main thing is whether he's credible, that determination would extend to his other representations of what happened before the shooting, during the confrontation at the alcove, and at the shooting. Oh, I get it. You're saying that if they think Goff was lying about the two shots and how he shot him, then they may decide he's lying on everything and not believe him when he says he was in imminent fear that Doucette would get his gun and kill him. Absolutely. Okay. Okay. I'm going to use my august powers as the presiding judge of the panel to defer submission of this case pending receipt of a brief on whether we have appellate jurisdiction, the status of final judgment. This is Friday the 7th. Can we get it by, I think, Wednesday of next week? Does that give you enough time, Mr. Hicks? Yes, sir. Ms. Berger, how about you? What if they need an order from the district judge at 54? Well, then we can take care of that when we cross that bridge. And can you get us a copy of the photograph that we can't? I don't have the colors, but I can submit that with the letter if you prefer. Can somebody please put this on a post-1980 copying machine and get us a nice color inkjet copy, or maybe a scanner? With your brief, get us a color copy. I will, Your Honor. By the way, from my perspective, if you both agree on the facts with respect to appellate jurisdiction and you just want to submit a joint letter, that's fine. You both may look at it and say, oh, these three judges overlooked something. I don't know if it is under WMX. We'll wait to hear from you. Thank you, Your Honor. Thank you very much. The standard is assessed for the week.
judges: Kleinfeld, Silverman, Hurwitz